**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

R.J. DUNN & ASSOCIATES,
INCORPORATED,

> *Plaintiff-Appellant,*

v.

FLEMING COMPANIES, INCORPORATED;
AHOLD USA SUPPORT SERVICES,
INCORPORATED,

> *Defendants-Appellees.*

No. 00-2399

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-99-68-L)

Argued: May 9, 2001

Decided: June 7, 2001

Before WIDENER and WILLIAMS, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Charles Barry Zuravin, ZURAVIN & COMAROMI,
P.A., Baltimore, Maryland, for Appellant. Stacie Eileen Tobin,
PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore,
Maryland, for Appellees. **ON BRIEF:** Anthony L. Meagher, Tashina

Gauhar, PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Balti-more, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

R.J. Dunn & Associates, Inc. ("Dunn") appeals the United States District Court for the District of Maryland's order granting summary judgment to Ahold USA Support Services ("Ahold") and Fleming Companies, Inc. ("Fleming") (collectively "Appellees"). Dunn, an independent commercial real estate broker, initiated this civil action after learning that Ahold had sold one of Ahold's supermarkets to Fleming. Dunn claims that Appellees owe it a commission on the sale. Because we conclude that the district court did not err in finding that Dunn had no entitlement to a commission, we affirm the district court's order.

I.

Because this is an appeal from the entry of summary judgment in favor of Appellees, we accept the facts alleged by Dunn as true. Fleming owns and operates supermarkets and grocery distribution centers throughout the United States. Beginning in 1995, Dunn and Fleming were engaged in a business arrangement whereby Dunn assisted Fleming on a case-by-case basis in locating and leasing sites for Fleming's new supermarkets. Dunn typically received a commission for its services pursuant to an individualized negotiation in each deal.

In or about April of 1996, Dunn and Fleming discussed the idea of forming a "strategic partnership," in which Dunn would act as Fleming's exclusive broker for its real estate acquisitions in the geographic area covered by Fleming's York, Pennsylvania distribution center.

(J.A. at 67, 71.) Although Fleming agreed to enter into this relationship, it declined to sign a formal written contract. Instead, Fleming and Dunn operated under an informal oral understanding based upon the terms of a written contract that Fleming had entered into with another regional broker in another part of the country. The contract was comprised of two parts: (1) a national agreement, which outlined the obligations of the contracting parties; and (2) a fee schedule, which controlled all the fees paid to the broker for its services.[1]

The national agreement provided that the broker would perform several specific duties in rendering assistance to Fleming with the lease or purchase of supermarkets, and in Paragraph 5(a)(1), it stated that the broker would receive commissions from the landlord or seller rather than from Fleming. The commissions were determined by the fee schedule attached to the agreement. The fee schedule also required the broker to remit forty percent of any commission paid by a landlord or seller to Fleming's wholly owned subsidiary, Progressive Realty, Inc. ("Progressive").

For several years, Fleming and Dunn operated under their oral agreement without difficulty. In at least eight deals, Fleming (through Progressive) drew up deal-specific written agreements that both Dunn and Fleming signed. Each agreement stated that (1) Dunn acknowledged it was entitled to a specific brokerage commission from the seller or lessor; and (2) Dunn agreed to pay Progressive a co-brokerage referral fee equal to forty percent of the earned commission. In each of these deals, Dunn negotiated its commission directly with the seller or lessor. Fleming's subsequent contracts with the seller or lessor would then recognize Dunn's status as broker and obligate the seller or lessor to pay a brokerage commission to Dunn.

## II.

Ahold, a competitor of Fleming, also owns and operates supermarkets throughout the eastern portion of the United States. In 1998,

---

[1]Although Fleming entered into this written contract with another regional broker, it declined to sign a similar contract with Dunn. Dunn points to the national agreement and the fee schedule as the framework for the parties' oral agreement.

Ahold sought to acquire the Giant Supermarket chain of stores, head-quartered in Landover, Maryland. To obtain Federal Trade Commission ("FTC") approval, Ahold agreed to divest itself of nine to ten retail supermarkets in Maryland and Pennsylvania. Ahold's original plan was to sell the supermarkets in two clusters — one in each state.

Upon learning of the possible divestiture, Tom Strzelczyk, Fleming's Director of Store Development for the York Distribution Service Area, asked Dunn to obtain additional information about the Maryland cluster of stores that Ahold was offering for sale. In July, on Fleming's behalf, Dunn contacted Frank Curci, Ahold's executive officer in charge of the divestiture. Dunn informed Ahold about Fleming's potential interest in the supermarkets, but Ahold refused to release information about the supermarkets without a signed confidentiality agreement. Dunn obtained a copy of Ahold's confidentiality agreement and forwarded it to Fleming for its signature. On July 8, 1999, after Fleming had signed the confidentiality agreement, Dunn faxed Ahold the signed agreement along with a letter stating that Dunn expected Ahold to pay Dunn a brokerage commission of two percent of the selling price of any supermarket bought by Fleming.

On July 9, 1998, however, after receiving Dunn's fax, Curci telephoned Robert Dunn, the president of Dunn, and informed him that Ahold did not utilize brokers and instead dealt directly with the buyers. Curci further stated that if Dunn was entitled to a commission for its services, it should seek such a commission from Fleming.

On July 14, Curci sent Fleming a letter listing the Maryland cluster of stores available for sale and informing Fleming that if Fleming wanted to purchase the cluster, the sale must occur within three days and without the detailed store information requested by Fleming. On July 16, Fleming informed Curci that Fleming declined to purchase the Maryland cluster on those terms. One week later, Fleming advised Dunn that its negotiations with Ahold had terminated.

In September 1998, after Ahold had failed to sell the Maryland supermarkets as a cluster, Ahold's CFO, Ernie Smith, began selling individual supermarkets, some of which were part of the original Maryland cluster and some of which were not, to different purchasers. Smith contacted Strzelczyk directly to determine if Fleming was

interested in purchasing one or more supermarkets. Smith testified in his deposition that he called Fleming because he believed Fleming would be approved by the FTC as an acceptable potential buyer. Smith was aware that there previously had been contact with Fleming about purchasing the Maryland cluster, but he did not know who had been Ahold's contact person at Fleming. When Smith called Fleming, he asked for the "CEO in the York division" at Fleming and was connected with Strelczyk. (J.A. at 125.)

Ultimately, Fleming agreed to purchase one supermarket from Ahold in Bel Air, Maryland. The supermarket that Fleming agreed to purchase was operated by the Martin's chain of supermarkets and had not been included in the Maryland cluster.[2] The final contract for sale did not provide for Dunn to receive a commission.

### III.

In November 1998, Dunn brought a breach of contract action against Fleming in the Circuit Court for Baltimore County. In January 1999, Appellees removed the case to the United States District Court for the District of Maryland. The parties filed cross-motions for summary judgment. Because the district court concluded that Dunn had not established any entitlement to a commission, whether by contract or in equity, it entered summary judgment in favor of Appellees on September 30, 2000.

Specifically, the district court rejected Dunn's argument that Fleming violated the exclusivity provisions of their oral contract because the undisputed evidence demonstrated that Fleming did not use another broker in purchasing the supermarket from Ahold; instead, the parties negotiated without the use of a broker. Because the terms of the oral agreement, as asserted by Dunn, did not require Fleming to use Dunn as a broker on the transaction, Fleming's decision to proceed without a broker was not a violation of the contract. The district court also rejected Dunn's claim that the course of dealing between the parties entitled it to a commission from Fleming, stating that

---

[2]The original Maryland cluster had included a supermarket in Bel Air, but it was part of the Giant Supermarket chain rather than the Martin's chain.

course of dealing is an interpretative device that cannot be used to impose additional terms to a contract.[3]

Additionally, the district court found that Fleming did not breach its duty to cooperate or its duty of good faith and fair dealing by failing to secure a commission for Dunn from Ahold. The district court noted that these causes of action were inapplicable in the absence of a contractual right establishing Dunn's entitlement to a commission from Fleming's purchase of the Ahold supermarket. Insofar as the oral agreement, under the terms asserted by Dunn, did not guarantee that Fleming would use a broker in every deal or that Fleming would insist that the seller pay Dunn a commission in every deal, neither Fleming nor Ahold took any action that interfered with Dunn's asserted contractual rights.

The district court also concluded that Dunn was not entitled to a commission from Ahold under section 14-105 of Maryland's real property law, *see* Md. Code Ann., Real Prop. § 14-105 (1996), because there is no indication that Ahold intended to adopt Dunn as its agent or ratify Dunn's claim that it was entitled to a commission. Finally, the district court concluded that because Dunn had, at best, little involvement in Fleming's purchase of the supermarket, it did not enrich either Fleming or Ahold such that it would be unjust for them to withhold a commission.

Dunn filed a timely notice of appeal. On appeal, Dunn claims that the district court's legal conclusions are erroneous.

---

[3]The district court viewed Dunn as attempting to add an additional term to their oral agreement. We note that to the extent Dunn claims it is seeking to explain or supplement a provision rather than add an additional term, its claim nonetheless fails because it cannot point to a single instance where it received a commission from Fleming because a seller refused to pay or where Fleming, as a buyer, paid Dunn a commission for any reason. Accordingly, we agree with the district court that Dunn has failed to point to any evidence establishing that such a course of dealing ever existed.

IV.

This Court reviews a grant of summary judgment de novo. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate only if there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is in dispute when its existence or non-existence could lead a jury to different outcomes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. *Id.* Mere speculation by the non-moving party cannot create a genuine issue of material fact. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court must view the evidence in the light most favorable to the non-moving party. *Smith v. Virginia Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

We have reviewed the record, briefs, and pertinent case law on this matter de novo, and we have had the benefit of oral argument. Our careful review persuades us that the rulings of the district court were correct. Accordingly, we affirm the grant of summary judgment to Appellees on the reasoning set forth in the district court's order. *See R.J. Dunn & Assocs., Inc. v. Fleming Cos.*, No. CA-99-68-L (D. Md. Oct. 2, 2000).

*AFFIRMED*